UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EVEREST NATIONAL INSURANCE COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ASSOCIATION OF WASHINGTON CITIES, a Washington Corporation, and TOWN OF EATONVILLE,<br><br>Defendants. | No.:<br><br>COMPLAINT FOR DECLARATORY JUDGMENT<br><br>**JURY DEMAND** |

Plaintiff Everest National Insurance Company files this Complaint for Declaratory Judgment and states as follows:

## I. **THE PARTIES**

1.1 **Plaintiff.** Everest National Insurance Company ("Everest") is a Delaware Corporation with its principle place of business in Somerset County, New Jersey.

1.2 **Defendant.** The Association of Washington Cities ("AWC") is a Washington corporation with its principle place of business in Thurston County, Washington.

1.3 **Defendant.** The Town of Eatonville ("Eatonville") is an incorporated municipality located in Pierce County, Washington.

COMPLAINT FOR DECLARATORY JUDGMENT          Page 1          **Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

## II.  JURISDICTION AND VENUE

2.1    **Jurisdiction.**  Because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs, this Court has subject matter jurisdiction over this action under both 28 U.S.C. §§ 1332(a)(1) and 2201(a).

2.2    **Venue.**  Because AWC and Eatonville reside in the Western District of Washington, venue is proper in this Court under 28 U.S.C. § 1391(b)(1).

2.3    **Intradistrict Assignment.**  Because AWC resides in Thurston County and Eatonville resides in Pierce County, assignment is proper in the Tacoma division of this Court under LCR 3(d)(1).

## III.  FACTS

A.    **The Claimants sued Eatonville in the Underlying Lawsuit.**

3.1    Scott and Drew Ann Hamrick were foster care providers licensed by the State of Washington Department of Health and Human Services.  The Hamricks lived within the jurisdictional limits of the Eatonville Police Department.

3.2    Five young girls—Haeli Hamrick, Staci Craney, KEH, JBH, and KMH (together, the "Five Claimants")[1]—were placed in foster care and assigned to live with Scott and Drew Ann Hamrick.

3.3    Over a period of several years, Scott Hamrick allegedly engaged in separate acts of physical and sexual abuse and neglect of each of the Five Claimants.  During this same period, Drew Ann Hamrick allegedly engaged in separate acts of physical abuse and neglect of each of the Five Claimants as well.

3.4    On October 27, 2011, Haeli Hamrick and Staci Craney sued the State of Washington and Eatonville in Pierce County Superior Court in the matter titled *Hamrick, et al. v. Washington, et al.*, Case No. 11-2-15110-2.  Later, a litigation guardian ad litem filed a

---

[1] Because they were minor children at the time the Underlying Lawsuit was filed, the complaint in the Underlying Lawsuit identifies KEH, JBH, and KMH using only their initials.

1  separate lawsuit on behalf of KEH, JBH, and KMH, in Pierce County Superior Court, titled

2  *Hamrick v. Washington, et al.*, No. 12-2-07320-7.  The two lawsuits were later consolidated

3  into one lawsuit (the "Underlying Lawsuit").

4       3.5     The Five Claimants alleged that the Eatonville Police Department received

5  multiple and separate reports of the Hamricks' abuse.  According to the Five Claimants, the

6  Eatonville Police, on at least four separate occurrences, over a period of more than four

7  years, negligently failed to report or reasonably investigate the evidence of abuse in the

8  Hamrick home.

9       3.6     During discovery in the Underlying Lawsuit, three of the Five Claimants

10  collectively identified at least four separate occurrences on which the Eatonville Police

11  received notification of the Hamricks' abuse.

12       a.     On April 4, 2007, after JBH ran away from the Hamrick home, the Eatonville

13            Police received a phone call expressing concern over comments Drew Ann

14            Hamrick made to JBH.  Haeli Hamrick alleged that, following this incident,

15            she told an Eatonville Police Officer she wanted to speak with him but the

16            officer told Haeli he would only speak with her in front of Drew Ann.

17            According to JBH, she told the Eatonville Police she was being physically and

18            sexually abused.

19       b.     On November 9, 2009, a friend of Haeli Hamrick allegedly reported to the

20            Eatonville Police that Scott Hamrick had attempted to kiss her.

21       c.     On March 16, 2010, a neighbor allegedly reported to the Eatonville Police that

22            KMH was being neglected and abused.

23       d.     On May 13, 2011, the Eatonville Police allegedly arrested KMH for stealing a

24            cell phone.  Allegedly, the cell phone contained nude pictures of KMH and a

25            text message asserting that Scott Hamrick was sexually abusing her.

26

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

**B.** **Eatonville issued excess liability policies to AWC, which only provided coverage for Eatonville after Eatonville exhausted the Policies' retained limits.**

3.7   Everest issued five insurance policies (together, the "Policies") to AWC, which identify Eatonville as an insured:

    a.   Policy No. 71P3000003-071, effective January 1, 2007, to January 1, 2008 (the "2007 Policy"), attached as **Exhibit A.**

    b.   Policy No. 71P3000003-081, effective January 1, 2008, to January 1, 2009 (the "2008 Policy"), attached as **Exhibit B.**

    c.   Policy No. 71P3000003-091, effective January 1, 2009, to January 1, 2010 (the "2009 Policy"), attached as **Exhibit C.**

    d.   Policy No. 71P7000062-101, effective January 1, 2010, to January 1, 2011 (the "2010 Policy"), attached as **Exhibit D.**

    e.   Policy No. 71P7000062-111, effective January 1, 2011, to January 1, 2012 (the "2011 Policy"), attached as **Exhibit E.**

3.8   Subject to their terms, exclusions, limitations, and conditions, the Policies provide excess liability coverage, if Eatonville's liability exceeds a self-insured "retained limit" of $1 million per occurrence:

> **We will pay on behalf of the insured, the 'ultimate net loss', in excess of the 'retained limit',** the insured becomes legally obligated to pay by reason of liability imposed by law because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this insurance applies and that takes place in the 'coverage territory' during the Policy Period.[2]
>
>                 * * *
>
> **We will pay any sums covered under this Policy only after your "retained limit" has been exhausted** by means of payments for judgments, settlements,

---

[2] Emphasis added.

COMPLAINT FOR DECLARATORY JUDGMENT             Page 4          **Bullivant|Houser|Bailey PC**

1   defense costs or . . . for 'claims' and 'suits' . . . .  We
2   will then pay damages in excess of your 'retained limit'
    up to our Limits of Insurance.[3]

3   3.9   The retained-limit applied separately to each consecutive policy period:

4   ***Limits of insurance apply separately to each***
    ***consecutive annual period.***  The Policy Period begins
5   with the effective date shown in the Declarations.  If
    the Policy Period is extended after issuance for an
6   additional period of less than twelve (12) months, the
7   additional period will be deemed part of the last
    preceding period.[4]
8

9   **C.**   **After more than two years of litigation, Eatonville notified Everest and then fully**
    **settled the claims against Eatonville in the Underlying Lawsuit.**
10

11   3.10   Although the first action consolidated into the Underlying Lawsuit began in

12   October 2011, Eatonville did not notify Everest of any lawsuit until November 12, 2013—

13   that is, Eatonville waited more than two years to notify Everest of the Underlying Lawsuit.

14   3.11   Everest acknowledged receipt of Eatonville's notice and later reserved

15   Everest's rights under the Policies.

16   3.12   Upon information and belief, before the trial in the Underlying Lawsuit began,

17   the Five Claimants agreed to fully settle each of their claims against Eatonville in exchange

18   for payment of $2 million.

19   **D.**   **Eatonville demanded payment from Everest, even though it had not exhausted**
    **the applicable retained limits as required by the Policies.**
20

21   3.13   On November 3, 2014, Eatonville tendered a claim to Everest under the 2007

22   Policy.

23   3.14   In the letter, Eatonville alleged that it had settled the claims in the Underlying

24

25   [3] Emphasis added.

26   [4] Emphasis added.

COMPLAINT FOR DECLARATORY JUDGMENT                    Page 5       **Bullivant|Houser|Bailey PC**

1 | Lawsuit for $2 million and incurred $156,551.64 in defense costs.  Eatonville stated that one
2 | of AWC's reinsurers paid the first $1 million of the settlement and that AWC had paid the
3 | second $1 million to fully settle each of the claims brought against Eatonville in the
4 | Underlying Lawsuit.  Thus, Eatonville alleged it had incurred covered settlement and defense
5 | costs totaling $2,156,551.64.

6 |        3.15    Eatonville further alleged that it was entitled to reimbursement for all
7 | payments in excess of a single $1 million retained limit under the 2007 Policy—that is, based
8 | on its payments totaling $2,156,551.64, Eatonville alleged that the 2007 Policy required
9 | Everest to reimburse Eatonville for $1,156,551.64 in settlement and defense costs.

10 |        3.16    Because more than one retained limit applies to the settlement and defense
11 | costs incurred by Eatonville to fully settle each of the claims against it in the Underlying
12 | Lawsuit, Everest has no obligation to reimburse AWC or Eatonville.

13 |        3.17    Everest filed this declaratory judgment action to determine its rights and
14 | obligations under the Policies.

## IV.  CLAIM FOR DECLARATORY JUDGMENT

4.1    Everest incorporates Paragraphs 1.1 through 3.17 by reference.

4.2    A genuine controversy exists between Everest, Eatonville, and AWC concerning the coverage, if any, provided by the Policies.

4.3    Everest seeks a declaration that it has no obligation to indemnify AWC or Eatonville under the Policies for the settlement and defense costs incurred to fully settle each of the claims brought against Eatonville in the Underlying Lawsuit.

## V.  JURY DEMAND

5.1    Everest requests a trial by jury.

## VI.  PRAYER FOR RELIEF

Everest requests the following relief:

COMPLAINT FOR DECLARATORY JUDGMENT        Page 6

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

6.1    **Declaratory Judgment.**  That this Court declare and decree that Everest has no obligation to indemnify AWC or Eatonville under the Policies for the settlement and defense costs incurred to fully settle each of the claims brought against Eatonville in the Underlying Lawsuit.

6.2    **Other Relief.**  For such other and further relief as the court deems just, proper, and equitable.

DATED:  December 24, 2014

BULLIVANT HOUSER BAILEY PC

By _____
       Daniel R. Bentson, WSBA #36825
       E-Mail: dan.bentson@bullivant.com

Attorneys for Plaintiff Everest National Insurance Company

15351214.1

COMPLAINT FOR DECLARATORY JUDGMENT         Page 7         **Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930